**AETNA CASUALTY & SURETY COMPANY, Appellant,**

**v.**

**Ralph D. BASS, Sr., Appellee.**

**No. 5195.**

Court of Civil Appeals of Texas, Waco.

Dec. 7, 1972.

Rehearing Denied Jan. 4, 1973.

---

1. The bequest in controversy is as follows: " . . . Dr. & Mrs. C. M. Darnall

$5000 Esteban Arredondo $2500 and Magdalena Martinez . . . "

Bailey, Williams, Westfall & Henderson, Woodfin C. Henderson, C. Edward Fowler, Jr., Dallas, for appellant.

Richard C. Guinan, Jr., G. Frank Brown, Brown, Elliott, Vetter & Denton, Dallas, for appellee.

HALL, Justice.

Aetna Casualty & Surety Company appeals from a judgment awarding plaintiff, Ralph D. Bass, Sr., a recovery on a policy of insurance issued by Aetna which provides benefits for plaintiff if he or his dependents receive medical treatment in a hospital.

Plaintiff pleaded the policy and alleged that, beginning in August, 1969, and continuously thereafter through April, 1970, his minor son was a patient in the Beaumont Remedial Clinic & Hospital for treatment of "minimal brain dysfunction with cerebral dysrhythmia"; that by reason of his son's hospitalization and treatment he has incurred expenses particularized in his petition; and that Aetna has refused to pay the resulting benefits due to him under the insurance contract. Plaintiff sought recovery of his medical expenses, statutory penalty, reasonable attorney's fees, and costs.

A "hospital" is defined in the policy to be "an institution which is engaged primarily in providing, for compensation from its patients, facilities for diagnosis and treatment of bed patients under supervision of a staff of doctors and which provides the services of registered nurses (R.N.) 24 hours a day. Sanatoriums for care and treatment of tuberculosis and of mental, psychoneurotic, and personality disorders are included if they meet these requirements."

Aetna answered with a general denial, and expressly denied liability on the ground that the Clinic is not a "hospital" as that term is defined in the policy.

Trial was to a jury. Stipulations were made by the parties regarding attorney's fees and the amount of policy benefits due plaintiff in the event a determination should be made that Aetna was liable.

In answer to the single question submitted to it, the jury found that the Clinic is a "hospital" within the policy definition of that term.

Judgment for plaintiff was rendered on the verdict and the stipulations.

Aetna contends that the record does not support the verdict because there is no evidence to support the jury's finding that the Clinic is "engaged primarily in providing facilities for treatment of bed patients;" or, alternatively, that the finding is against the great weight and preponderance of the evidence.

■ Aetna's contentions are based on the proposition that the term "bed patients" is used in the policy definition of "hospital" to mean those who are *bedridden* because of illness. Plaintiff counters with the argument that the term "bed patients" must be defined as patients confined to the hospital for treatment for whom a bed is provided, in order to be consistent and harmonious with the second sentence in the definition of "hospital" which provides that "sanatoriums for care and treatment of * * * mental and psychoneurotic and personality disorders are included * * *," because it is common knowledge that persons institutionalized with those illnesses are not ordinarily confined to bed.

We agree with plaintiff. The policy definition of "hospital" is obviously intended to include within the term "bed patients" those who, though not bedridden, are required by the nature of their illnesses and treatment to be institutionalized.

To properly decide whether or not the evidence is legally and factually sufficient to support the questioned finding, we must, and do, follow the familiar rules set forth in King v. King, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Considered most favorably in support of the finding, the record yields the following facts and inferences. The Clinic is licensed as a hospital by the State of Texas. It is a member of the Texas Hospital Association and the American Hospital Association and fully meets the high standards of those organizations. It occupies a large, four-story structure which was originally constructed for and used by a general hospital. It has an emergency room which is fully equipped for surgical operations "up to" a tracheotomy or appendectomy. However, the Clinic is a diagnostic and treatment center for children with minimal cerebral dysfunction, and any surgery performed there would be merely incidental to that specialty.

The Clinic is staffed by an executive director, three neuro-psychiatrists, three pediatricians, five ophthalmologists, two clinical psychologists, three registered nurses, licensed vocational nurses, and aides. All are on call at all times. It has its own pharmacy and a full-time pharmacist.

The patients are not mentally retarded. They are not outwardly crippled, and all are ambulatory. They have adequate vision and adequate hearing. But, each has a dysfunction in the central nervous system. The dysfunction usually appears as a difficulty in the receptive or expressive or integrative language development of the patient. It also manifests itself in behavior in many instances. The children treated by the Clinic are not primarily emotionally disturbed, though they all have "emotional overlays" which can be organically based or can be due to frustrations and failures.

It is the purpose of the Clinic to habilitate its patients so that they can return to functioning successfully in the home, school and community. The Clinic uses medical, psychological and educational disciplines in the treatment of its patients. Medicine is the "primary discipline" because the patients' problems are primarily physical problems. " 'Structure' is the key word for the daily schedule of the patients. There is a time for getting up and a time for eating and a time for brushing and a time for [medical] therapy and a time for recreational therapy and a time for bed. Everything is structured." The Clinic has 77 patients who are confined to the hospital day and night. The other 58 patients are outpatients who "come in the morning and leave in the evening, five days a week." Plaintiff's son was an inpatient. Inpatients are provided with private rooms which contain a bed, a dresser, and a clothes closet. The "structured treatment" of the inpatients requires that they spend "specific parts of each day and night in bed."

In our opinion, the evidence we have recited, particularly that portion which shows that a sizeable majority of the patients at the Clinic are inpatients who are required as a part of their treatment to spend specified periods of time in bed, is legally sufficient to support the finding that the Clinic is "engaged primarily in providing facilities for treatment of bed patients." Moreover, a careful analysis of the entire record convinces us that the finding is not against the great weight and preponderance of the evidence.

Aetna's points and contentions are overruled. The judgment is affirmed.